201 Linden Blvd. Partners LLC v Shaw (2026 NY Slip Op 50280(U))

[*1]

201 Linden Blvd. Partners LLC v Shaw

2026 NY Slip Op 50280(U)

Decided on March 6, 2026

Civil Court Of The City Of New York, Kings County

Weisberg, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on March 6, 2026
Civil Court of the City of New York, Kings County

201 Linden Blvd. Partners LLC, Petitioner,

againstEunice Shaw, Respondents.

Index No. 310327/25

Michael L. Weisberg, J.

Introduction
Respondent Eunice Shaw died in March 2021. In a proceeding it commenced a few months after she died, Petitioner was made aware that she had died and agreed to rent the apartment to her grandson, who paid all the rent arrears due at the time. Nonetheless, in 2024, Petitioner sued Eunice Shaw again. Then in 2025, it did it again. Commencing this third case against Shaw was frivolous. The court imposes sanctions against Petitioner in the amount of $10,000.00.
FactsThe petition in this nonpayment summary eviction proceeding alleges that Respondent Eunice Shaw is the tenant of the subject rent-stabilized apartment pursuant to a written lease. When she failed to answer, Petitioner filed a request for a default judgment, which request included an affidavit from registered head officer and managing agent Jonathan Samet wherein he alleged he spoke to Shaw on the telephone to confirm her non-military status. Based on Petitioner's submissions, the court entered judgment against Shaw and issued a warrant for her eviction.
After Petitioner's marshal served a notice of eviction, David Simms filed a motion to vacate the default judgment, alleging that he was Shaw's grandson and that she was deceased. He also referred to a prior case.
About a year before the instant case, Petitioner had also sued Shaw alleging nonpayment of rent (index number 308102/24). Like this case, Petitioner obtained a default judgment, with Samet alleging that he spoke to Shaw on the telephone. Simms moved to vacate the default judgment, alleging that he had been awarded succession rights.
The court vacated the judgment and dismissed the petition, noting that Shaw had died over three years earlier in March 2021.
However, that was not the first time Petitioner learned that Shaw was deceased. It had also sued Shaw for nonpayment of rent in 2021 (index number 309745/21). Simms appeared in [*2]that case, as well. In August 2022, he and Petitioner entered into an agreement that 1) substituted Simms for Shaw; 2) granted Petitioner a final judgment against Simms and stayed execution of the warrant of eviction provided that he paid rent arrears; and 3) "recognize[d] David Simms as successor." One year later, Petitioner and Simms executed another agreement that acknowledged that all the rent was paid up to date and required Petitioner to offer Simms a lease in his name.
To summarize, Petitioner learned that Shaw had died, at the latest, in August 2022. But it sued Shaw again in 2024, where it was reminded that Shaw was deceased, and then again, less than a year later. In both latter cases, Samet made a sworn statement that he had spoken to Shaw on the telephone.
On these facts, in August 2025, the court ordered (NYSCEF Doc. 8) Petitioner to show cause why the court should not impose sanctions under 22 NYCRR 130-1.1. In lieu of appearing to testify in-person, Petitioner elected to make a written submission, which comprised the affidavit of Jonathan Samet (NYSCEF Doc. 13). In sum and substance, Samet said little more than that he made a mistake and that he "now understand[s] Ms. Shaw to be deceased."
DiscussionSection 130-1.1 of the Rules of the Chief Administrator authorizes the court to award costs or impose financial sanctions against a party for frivolous conduct (Rules of the Chief Admr of Cts [22 NYCRR] § 130-1.1). Frivolous conduct includes that which is "completely without merit in law" and "asserts material factual statements that are false" (id.). "In determining whether the conduct undertaken was frivolous, the court shall consider, among other issues, the circumstances under which the conduct took place, including the time available for investigating the legal or factual basis of the conduct, and whether or not the conduct was continued when its lack of legal or factual basis was apparent, should have been apparent, or was brought to the attention of counsel or the party" (id.).
"Sanctions are retributive, in that they punish past conduct. They are also goal oriented, in that they are useful in deterring future frivolous conduct not only by the particular parties, but also by the Bar at large" (Levy v Carol Mgt. Corp., 260 AD2d 27, 34 [1st Dept 1999]). "The intent of [sanctions] is to prevent the waste of judicial resources and to deter vexatious litigation and dilatory or malicious litigation tactics" (Matter of Kernisan v Taylor, 171 AD2d 869, 870 [2d Dept 1991]). "Relitigating already-decided matters is sanctionable, as is imposing on the judicial system an unnecessary burden" (Matter of Hoppenstein, 209 AD3d 492 [2d Dept 2022] [internal citations omitted]).
Parties and attorneys have been sanctioned for conduct as varied as continuing to pursue claims that the tenant defaulted under their lease "well after it was apparent or should have been apparent that those claims lacked merit" (Kaygreen Realty Co., LLC v IG Second Generation Partners, L.P., 78 AD3d 1008, 1009 [2d Dept 2010]); for commencing a foreclosure action without leave where a judgment of foreclosure had already been issued in a prior action (Private Capital Group LLC v Connor, 242 AD3d 1236 [2d Dept 2025]); for maintaining an action after the defendant asserted a valid jurisdictional objection (Viacom, Inc. v Silverwood Dev., 188 AD2d 1057 [4th Dept 1992]); for a frivolous appeal (Bell v State of New York, 96 NY2d 811 [2001]); and for interruptive, insulting, and meritless behavior at a deposition (Cadlerock Joint Venture, L.P. v Sol Greenberg & Sons Intl., Inc., 94 AD3d 580 [1st Dept 2012]).
The court finds that Petitioner's commencement of an eviction proceeding against Eunice Shaw, after at least twice in prior proceedings having been informed that she was deceased, is [*3]frivolous within the meaning of section 130-1.1. The court further finds that the frivolous conduct was not an isolated mistake but part of a pattern. Petitioner commenced two separate proceedings against Shaw after recognizing her grandson David Simms as the tenant of the apartment. Petitioner's managing agent also submitted sworn statements asserting that he spoken to Shaw on the telephone despite her death years earlier. The repetition of these false assertions demonstrates a failure to undertake even minimal investigation before invoking the court's process and weighs strongly in favor of a substantial sanction.
The court therefore imposes a sanction of $10,000.00, the maximum allowable under the law (Rules of the Chief Admr of Cts § 130-1.2). The maximum sanction is warranted 1) to deter Petitioner from undertaking similar conduct in the future and to incentivize it to take the necessary steps to prevent it; and 2) to punish Petitioner for wasting judicial resources, haling David Simms needlessly into court, and putting him at risk of eviction; 3) because this proceeding is not the first one Petitioner commenced against Shaw after being notified that she was deceased. In imposing the maximum sanction, the court also considers Petitioner's lack of contrition and glib explanation for its "mistake."
Accordingly, it is ORDERED Petitioner shall deposit $10,000.00 with the clerk of the court for transmittal to the Commissioner of Taxation and Finance (see Rules of the Chief Admr of Cts § 130-1.3); and it is further
ORDERED that said deposit shall be made within 20 days of this decision's upload to NYSCEF, with proof thereof filed within 5 days thereafter.
This is the court's decision and order.
Dated: March 6, 2026Michael L. Weisberg, JHC